IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LASHONDA MCDOWELL,<br><br>Plaintiff,<br><br>vs.<br><br>DISABILITY RESOURCE CENTER d/b/a ACCESSABILITY,<br><br>Defendant. | Civil Action No.: 2:23-cv-485-DCN-MGB<br><br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

The Plaintiff above named, complaining of the acts of the above-named Defendant, states as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, Lashonda McDowell ("McDowell") is a resident and citizen of the County of Charleston, South Carolina.

2. Upon information and belief, Defendant Disability Resource Center d/b/a AccessAbility ("Defendant" or "AccessAbility") is a limited liability company incorporated in the state of South Carolina. Defendant does business and maintains an office and agents in the County of Charleston, State of South Carolina.

3. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331, 42 U.S.C. §2000e ("Title VII") and 42 U.S.C. §1981.

4. Venue for all causes of action stated herein lies in the District of South Carolina, Charleston Division pursuant to 28 U.S.C. § 1391(b), in that the Plaintiff resides in the district, Defendant does business in the district, and a substantial part of the events giving rise to Plaintiff's claims occurred in the district.

5. Defendant is an employer with 15 or more employees and otherwise subject to Title VII.

6. Defendant is an employer subject to 42 U.S.C. 1981.

7. Plaintiff timely filed her complaint with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") alleging discrimination based upon color and race. Plaintiff's charge of discrimination also included an allegation of retaliation.

8. On or about January 23, 2023, Plaintiff received a right to sue notice from the EEOC regarding the complaint described above.

9. That Plaintiff timely filed the foregoing action within ninety (90) days of the date on which she received the notice of right to sue described above.

10. Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of this action.

11. Plaintiff is a black American and female.

12. On or about September 13, 2021, Plaintiff was hired by Defendant as lead facilitator. In her role as lead facilitator, Plaintiff's direct supervisor was Veneka Jasper, a black American female ("Jasper").

13. In her position as lead facilitator, Plaintiff conducted educational workshops directed toward individuals with disabilities. These workshops were mainly conducted in local public-school campuses.

14. Jasper's supervisor was Kurtis Whitehead (Whitehead"), a Caucasian-American male.

15. Both Jasper and Whitehead reported to Julia Martinelli ("Martinelli"). At all times relevant, Martinelli was, and continues to be, employed by Defendant as its Director.

16. Jasper and Martinelli supervised Plaintiff.

17. In or about February, 2022, another co-worker, Karen Turner ("Turner") began repeatedly using the word "nigger" to refer to black Americans.

18. Plaintiff and another co-worker, Octivia Booker ("Booker") were present when Turner used the word "nigger" to refer to black Americans. Booker also identifies as a black American.

19. Immediately after hearing Turner use the word "nigger," when referring to black Americans, both Plaintiff and Booker objected to Turner's continued use of the word.

20. Plaintiff immediately reported to Jasper that Turner was using the word "nigger."

21. Plaintiff informed Turner that her use of the word "nigger" is inappropriate. Turner indicated that her use of the word "nigger" was acceptable in spite of Plaintiff's request for Turner to stop.

22. Subsequent to the incident with Turner and Jasper described above, Plaintiff and Booker decided to report the incident to Martinelli. Both Plaintiff and Booker agreed to report the incident in person.

23. When Martinelli was available receive the report of Turner's comments, Plaintiff made the complaint on behalf of herself and Booker.

24. In or about February 2022, Plaintiff reported Turner's use of the word "nigger" on behalf of herself and Booker to both Martinelli and Whitehead. Plaintiff informed Martinelli and Whitehead that Booker was present and also offended with regard to Turner's use of the word "nigger."

25. After receiving Plaintiff's complaint of Turner's behavior, Martinelli and Whitehead, dismissed Plaintiff's complaint. Martinelli told Plaintiff that Plaintiff and Booker should not be offended because Turner was not referring to either of them when Turner used the term "nigger."

26. In or around March 2022, Plaintiff complained to Martinelli that two other employees were making racially offensive jokes, comments, and impressions about Asian-Americans.

27. Subsequent to the March 2022 complaint, Martinelli held a meeting with Defendant's employees including Whitehead, Booker, Plaintiff, and others to discuss the offensive comments made toward Asian-Americans (the "March 2022 Meeting").

28. During the March 2022 Meeting, Whitehead told Plaintiff he felt he did not appreciate being "policed" in his workplace to ensure he does not make any racially offensive comments. At the conclusion of the March 2022 Meeting, Martinelli told the attendees, including Plaintiff, that she "did not want to hear about this anymore," and did not want to receive any further reports of the use of racially offensive language.

29. Subsequent to the March 2022 Meeting, Defendant began retaliating against Plaintiff for making reports of a hostile work environment. By way of example, on or about March 23, 2022, Martinelli falsely accused Plaintiff of "protecting" Booker from disciplinary action because she is a black-American.

30. On or about April 7, 2022, Whitehead and Martinelli further retaliated against Plaintiff by removing the door and window from her workspace. The curtains covering the window were also removed.

31. Whitehead informed Plaintiff the purpose of removing the doors and windows was to "help with the circulation of air" or words of similar effect related to ventilation of the workspace.

32. The reason Whitehead gave Plaintiff for the removal of the doors and windows was false.

33. The true reason the removal of the doors and windows of Plaintiff's workspace was because Defendants wanted to punish Plaintiff for making reports of discrimination, retaliation and hostile work environment. Defendants also wanted to dissuade Plaintiff and Booker from

participating in activity protected by Title VII and 28 U.S.C. 1981 such as making complaints of discrimination, retaliation, and hostile work environment.

34. On or about April 12, 2022, Plaintiff attended a diversity and inclusion training required by Defendant. During the training, the American Civil Rights era was discussed. Moreover, as part of one presentation during the training, Civil Rights era photographs of black Americans being accosted by Caucasian-Americans were displayed.

35. During the April 12, 2022, training, Martinelli commented that black Americans "today" should have a "thick skin" and tolerate abusive treatment like those "back then."

36. Martinelli directed this comment toward Plaintiff as a reply to Plaintiff's previous complaints of discrimination and in order to dissuade Plaintiff and others from making complaints about discrimination. Plaintiff objected to Martinelli's comment.

37. Subsequent to Plaintiff's complaints of discrimination, Defendant continued its campaign of retaliatory conduct by creating a hostile work environment as described above.

38. On or about June 2, 2022, Plaintiff informed Jasper she would not be able to cover a class that was to occur on June 13, 2022, because she would be returning from vacation. Jasper acknowledged this request and found another person (Jason Torres) to cover the class.

39. On or about June 14, 2022, Plaintiff was disciplined for not facilitating the June 13, 2022, class even when she was not assigned to cover the class.

40. The June 14, 2022, disciplinary action was issued to Plaintiff in furtherance of the hostile work environment and in retaliation for making complaints of discrimination.

41. On or about June 15, 2022, Defendant further retaliated against Plaintiff by reducing her working hours.

42. On or about June 15, Plaintiff attempted to complain to Martinelli about Whitehead other employees creating a hostile work environment in the workplace. Plaintiff also referenced previous complaints regarding employees making fun of her hair, mockingly mimicking accents to joke about black Americans, and other racially offensive and hostile acts.

43. Martinelli rebuffed her complaints and told Plaintiff she was misinterpreting the environment. Martinelli did not investigate Plaintiff's complaints.

44. On or about June 16, 2022, Martinelli terminated Plaintiff's employment.

FOR A FIRST CAUSE OF ACTION:
VIOLATION OF TITLE VII
DISCRIMINATION BASED ON RACE/COLOR

45. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

46. Plaintiff, as an African-American, is a member of a protected class under Title VII.

47. Throughout her employment with Defendant, Plaintiff was performing her job satisfactorily.

48. Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, bullying, intimidation, decreased working hours, receiving unwarranted disciplinary actions, and being terminated from her employment with Defendant.

49. Plaintiff's treatment was different from similarly situated employees outside her protected class. By way of example, Plaintiff was disciplined for violating Defendant's dress code policy when other Caucasian-American employees were not.

50. There is additional evidence that gives rise to an inference of unlawful race-based discrimination to include, but not limited to Plaintiff's supervisors making comments that she, as an black American, was overly vocal, and argumentative, should have a "think skin" and tolerate

being assaulted, and told not to be offended when coworkers use the word "nigger" when referring to African-Americans.

51. Defendant's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

52. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

53. That the Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the Defendant.

FOR A SECOND CAUSE OF ACTION:
VIOLATION OF TITLE VII
RETALIATION

54. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

55. That as alleged above, Plaintiff complained to Defendant on several occasions that she was being discriminated against based on her disability and race.

56. That Plaintiff's complaints were made in good faith, and constitute protected activity under Title VII.

57. Defendant's actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

58. Plaintiff, on numerous occasions, complained to Defendant about the above-described race-based discrimination and hostile work environment and Defendant was on notice that it was occurring.

59. Despite being notified of the above-mentioned conduct, Defendant wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendant continued to subject Plaintiff to race-based discrimination in violation of Title VII.

60. Subsequent to and in retaliation for Plaintiff making complaints, Defendant created and allowed the work environment to be so hostile that no person could have withstood such treatment.

61. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

62. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from the Defendant.

<u>FOR A THIRD CAUSE OF ACTION:</u>
<u>VIOLATION OF TITLE VII</u>
<u>HOSTILE WORK ENVIRONMENT</u>

63. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

64. During Plaintiff's employment, she was subjected to an unwelcome and hostile environment created by Defendant and its agents.

65. The hostile environment Plaintiff was subjected to was based on her disability and race.

66. Plaintiff was subject to additional harassment because Plaintiff made complaints about discrimination and retaliation.

67. Defendant's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

68. The hostile environment was sufficiently severe and pervasive to alter the conditions of her employment. Specifically, Defendant knew about, created, cultivated, and allowed the work environment to be so hostile Plaintiff was forced to take a leave of absence from work.

69. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

70. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from Defendant.

FOR A FOURTH CAUSE OF ACTION:
VIOLATION OF 42 U.S.C. 1981
RACE DISCRIMINATION

71. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

72. Plaintiff is a black American.

73. Throughout her employment with Defendant, Plaintiff was performing her job satisfactorily.

74. Plaintiff was subjected to adverse employment actions by her employer and agents of her employer including, but not limited to, bullying, intimidation, decreased working hours, receiving unwarranted disciplinary actions, and being terminated from her employment with Defendant.

75. Plaintiff's treatment was different from similarly situated employees outside her protected class. By way of example, Plaintiff was improperly disciplined for failing to report to work when other non-black employees were not. Specifically, Jason Torres, missed work, did not return on a specified date, and was not disciplined.

76. There is additional evidence that gives rise to an inference of unlawful race-based discrimination to include, but not limited to Plaintiff's supervisors making comments that she, as an African-American, was overly vocal, and argumentative, should have a "think skin" and tolerate being assaulted, and told not to be offended when coworkers use the word "nigger" when referring to black Americans.

77. Defendant's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

78. Defendant's actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

79. Plaintiff, on numerous occasions, complained to Defendant about the above-described race discrimination and hostile work environment and Defendant was on notice that it was occurring.

80. Despite being notified of the above-mentioned conduct, Defendant wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendant continued to subject Plaintiff to race discrimination in violation of 42 U.S.C. 1981.

81. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

82. That the Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from the Defendant

83. But for Plaintiff's race, Defendant would have properly investigated Plaintiff's complaints and would not have allowed the hostile environment to continue in the Office.

84. But for Plaintiff's race, Defendant would not have discriminated against Plaintiff.

85. But for Plaintiff's race, Defendant would not have reduced Plaintiff's working hours.

86. But for Plaintiff's race, Defendant would not have terminated Plaintiff.

87. Plaintiff was discriminated against in violation of 42 U.S.C. 1981.

88. As a result of Defendant's actions, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

89. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and she is entitled to recover punitive damages from Defendant.

<u>FOR A FIFTH CAUSE OF ACTION:</u>
<u>VIOLATION OF 42 U.S.C. 1981</u>
<u>RETALIATION</u>

90. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

91. That as alleged above, Plaintiff complained to Defendant on several occasions that she was being harassed and discriminated against because of her race.

92. That Plaintiff's complaints were made in good faith, and constitute protected activity under 42 U.S.C. 1981.

93. Subsequent to and in retaliation for Plaintiff making complaints, Defendant created and allowed the work environment to be so hostile in order to prevent Plaintiff from engaging in protected activity.

94. In retaliation for Plaintiff making complaints, defendant reduced Plaintiff's working hours and failed to promote Plaintiff.

95. In retaliation for Plaintiff making complaints, defendant terminated Plaintiff's employment.

96. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

97. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the Plaintiff, and therefore Plaintiff is entitled to recover punitive damages from the Defendant.

<u>FOR A SIXTH CAUSE OF ACTION:</u>
<u>VIOLATION OF 42 U.S.C. 1981</u>
<u>HOSTILE WORK ENVIRONMENT</u>

98. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

99. During Plaintiff's employment, she was subjected to an unwelcome and hostile environment created by Defendant and its agents.

100. Defendant's conduct as described above was unwelcome.

101. The hostile environment Plaintiff was subjected to was due to her race.

102. Plaintiff was subject to additional harassment because Plaintiff made complaints about discrimination and retaliation.

103. Defendant's actions as alleged above created a work environment that a reasonable person would find to be harassing, hostile, and abusive.

104. Plaintiff, on numerous occasions, complained to Defendant about the above-described race-based discrimination and hostile work environment and Defendant was on notice that it was occurring.

105. Despite being notified of the above-mentioned conduct, Defendant wholly failed to take prompt and effective remedial action to end the illegal conduct and Defendant continued to subject Plaintiff to race-based discrimination in violation of 42 U.S.C. 1981.

106. Defendant's behavior humiliated Plaintiff, unreasonably interfered with her work performance, affected the terms, conditions, and privileges of her employment and otherwise caused Plaintiff severe psychological and physical harm.

107. The hostile environment was sufficiently severe and pervasive to alter the conditions of her employment. Specifically, Defendant knew about, created, cultivated, and allowed the work environment to be hostile.

108. That as a result of the above, Plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

109. Defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff and, therefore, Plaintiff is entitled to recover punitive damages from Defendant.

FOR A SEVENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110. Plaintiff hereby realleges each and every allegation contained in the Paragraphs above as fully as if set forth herein verbatim.

111. Defendant intentionally and recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from her conduct.

112. The conduct of Defendant was so extreme and outrageous that is exceeded all possible bounds of decency, was atrocious, and is utterly intolerable in a civilized community.

113. Defendant's conduct caused Plaintiff to suffer extreme and severe emotional distress such that no reasonable person could be expected to endure it.

114. As a direct and proximate result of the actions of Defendant, Plaintiff sustained damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

WHEREFORE, Plaintiff requests a jury trial on all causes of action and prays for the following relief against Defendant: for such amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, anxiety, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, and physical and personal injuries), punitive damages, the cost and disbursements of this action, including reasonable attorneys' fees, prejudgment interest and for such other and further relief as the court deems just and proper.

        RESPECTFULLY SUBMITTED,

        GAFFNEYLEWIS LLC

        s/*Emmanuel J. Ferguson, Sr.*
        Emmanuel J. Ferguson, Sr.
        Federal Bar #11941
        3700 Forest Drive, Suite 400
        Columbia, South Carolina 29204
        (803) 875-1925  telephone
        (803) 790-8841  facsimile
        eferguson@gaffneylewis.com

        *Attorney for Plaintiff*

February 3, 2023
Columbia, South Carolina